## York Gazette Company, Limited, Appellant, v. York County.

*Election law—Publication of proclamation for general election—Sheriff—Newspaper—Statutes—Repeal—Acts of. June 23, 1885, P. L. 144, June 10, 1893, sec. 10, P. L. 419, and June 23, 1895, P. L. 392.*

The Act of June 23, 1885, providing for the advertisement of general elections "in not more than four weekly or daily newspapers published in the county," is not repealed by the tenth section of the Act of June 10, 1893, P. L. 419, as amended by the Act of June 26, 1895, P. L. 392, which provides for the advertisement "in at least three newspapers." The two acts may well stand together and each supply what is lacking in the other, namely the maximum number of publications in the act of 1885, and the minimum number in the act of 1895.

Subject to the limitation named in the act of June 23, 1885, the discretion of the sheriff is absolute as to the selection of the newspapers in which the advertisement shall appear. If he advertises in more papers than the law provides, the county will not be liable for the excess; nor can any one newspaper in such a case recover from the county until the sheriff selects it as one of those which should be paid.

To effect a repeal of one statute by another by implication there must be a general and positive repugnance between the provisions of the new law and the old so that they cannot stand together, or be consistently reconciled. Such a repeal is never to be favored, and will not be allowed unless it is manifest that the legislature so intended, as laws are presumed to be passed with deliberation, and with full knowledge of all existing laws on the subject. It is but reasonable to conclude that in passing a statute it was not intended to interfere with, or abrogate any former law relating to the same matter unless the latter is repugnant to the earlier one, or unless the reason for the earlier act is beyond peradventure removed.

Argued March 15, 1904. Appeal, No. 7, March T., 1904, by plaintiff, from judgment of C. P. York Co., April T., 1903, No. 17, on case stated in suit of York Gazette Company, Limited, v. York County. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Case stated to determine the liability of a county for publication of a general election.

The facts appear by the opinion of the Superior Court.

The court below in an opinion by BITTENGER, P. J., entered judgment for defendant on the case stated.

*Error assigned* was the judgment of the court.

*E. W. Spangler* and *M. H. Wanner*, for appellant.—When a section in an existing law is amended, it ceases to exist, and is effectually repealed and obliterated from the statute, and the section as amended supersedes such original section, and becomes incorporated in, and constitutes a part of, the original act: Blakemore v. Dolan, 50 Ind. 194; Manlove v. White, 8 Cal. 376; Holbrook v. Nichol, 36 Ill. 161.

An act and its supplement are to be construed as one law: Van Riper v. Essex Public Road Board, 38 N. J. L. 23.

Even if the amended act of 1895 was not a part of the act of 1893, the former being manifestly inconsistent and repugnant in its operation with the act of 1885, the latter is repealed by it, by necessary implication: Com. v. Summerville, 204 Pa. 300.

Where the legislative intent is that a later act is intended as a substitute for a former act, and although the later act contains no express words to that effect, it must on principle, as in reason and common sense, operate to repeal the former: Johnston's Est., 33 Pa. 511.

If two acts are inconsistent, the latest must prevail: Com. v. Cross Cut R. R. Co., 53 Pa. 62.

The reported cases show that the discretion of the sheriff is well established in many particulars, e. g., he need not advertise for, or accept the lowest bids for publishing election proclamations: Hirsh v. Schuylkill Co., 9 Pa. Dist. Rep. 297; Bartholomew v. Lehigh Co., 148 Pa. 82.

*J. S. Black*, with him *E. D. Ziegler*, county solicitor, and *Charles A. Hawkins*, for appellee.—Where a late statute is absolutely repugnant to a former one only in part, it repeals the former one only so far as the repugnancy extends, and leaves all the remainder in force: In re Contested Election of Barber, 86 Pa. 392–400; Brown v. County Commissioners, 21 Pa. 37.

OPINION BY ORLADY, J., July 28, 1904:

This action is brought to recover $374.10, from the county of York, for the publication in the plaintiff's newspaper on October 24, 1902, of the sheriff's election proclamation for the general election on November 4, 1902.

It appears by the case stated that the sheriff caused the same proclamation to be published in ten other newspapers in York county. The space occupied in each issue amounted to 3,741 lines, and the rate charged therefor was ten cents a line, which is the regular and usual rate in said county for like publications. That bills for the publication of said proclamation, of like amounts respectively for each of the eleven newspapers, were presented to the sheriff for approval, and after which approval they were presented to the commissioners of York county. Warrants for the payment of the respective bills were refused by the county commissioners for the reason that the sheriff had " abused his discretion and exceeded his authority under the law, in authorizing and causing the publication in eleven newspapers, and that the county of York was not liable to pay for the publication of the proclamation in more than three newspapers published in the county of York." It appears that in 1890, when York county had a population of 116,413, there were six daily and thirteen weekly newspapers published in the county.

The Act of June 23, 1885, P. L. 144, entitled " An act for the regulation and advertisement of general elections," provides that " it shall be the duty of the sheriff of every county in this commonwealth to give notice of the general election, by publication of the same once a week, in not more than four weekly or daily newspapers published in the county."

The 10th section of the Act of June 10, 1893, P. L. 419, provides that " it shall be the duty of the sheriff of every county

. . . . to give notice of any general election to be held therein by proclamation by advertisement in at least two newspapers," This entire 10th section was amended by an act approved June 26, 1895, P. L. 392, by which amendment it is made the duty of the sheriff to give notice of any general election by advertisement in at least three newspapers. The act of 1885 is a single paragraph (with a repealing clause) and refers only to the advertisement of a general election, and did not affect other provisions of the election laws in force at that time.

The act of 1893 entitled an act to regulate the nomination and election of public officers, and requiring certain expenses incident thereto to be paid by the several counties, and punishing certain offenses in regard to such elections, is a comprehensive system embracing the manner of nomination, selection of candidates, the settlement of contests, the printing of ballots, conduct of election officers and county commissioners, the holding of the election proper, and preserving the ballots and records, and it also provides for the punishment of all persons who violate its provisions. There are thirty-six clauses, embracing seventeen pages of our pamphlet laws, and it provides that all laws and parts of laws, inconsistent therewith shall be, and the same are hereby, repealed. The amendment of the tenth section of the act of 1895, served only to substitute the section then enacted for the 10th section of the act of 1893. In other respects the act of 1893 is unchanged, and there was no necessity for the repealing clause in the act of 1895, for the reason that the whole enactment is an amendment only of the named section in the act of 1893.

The principal question in this case is are the words "in not more than four weekly or daily newspapers" of the act of 1885, repealed by the words "in at least three newspapers" in the amendment of the act of 1893 by the act of 1895.

When an apparent conflict is presented by different parts of the same act it is the duty of the courts to reconcile them, if possible, by such construction as will give effect to all the parts. The presumption is that the legislature did not intend any inconsistency but when there is a conflict between a prior and subsequent act, the presumption is that the latter repeals the former. The courts are not bound or even authorized to seek a construction that will reconcile them, further than to inquire if the con-

flict is real or merely apparent. If it is real the result is the repeal of the prior act: Spees v. Boggs, 204 Pa. 504.

The maximum number of publications provided for in the act of 1885 is not repugnant to the minimun number of publications specified in the act of 1893, as amended by the act of 1895. They are consistent with each other and do not in any way affect the general scope and purpose of the latter act, by being inconsistent with it. The two provisions may well stand together, and being a matter of such importance it must necessarily have been before the legislative mind in 1893 and 1895, and no provision having been made in the latter act for the maximum number of publications, the maximum number stipulated in the earlier act of 1885 may easily be a coherent part of our election system and construed accordingly. Furthermore there is no specific repeal of the act of 1885, and to effect this by implication there must be a general and positive repugnance between the provisions of the new law and the old so that they would not stand together or be consistently reconciled: Brown v. County Commissioners, 21 Pa. 37; Homer v. Commonwealth, 106 Pa. 221; Sifred v. Commonwealth, 104 Pa. 179.

Such a repeal is never to be favored, and will not be allowed unless it is manifest that the legislature so intended, as laws are presumed to be passed with deliberation, and with full knowledge of all existing laws on the subject. It is but reasonable to conclude that in passing a statute it was not intended to interfere with, or abrogate any former law relating to the same matter unless the latter is repugnant to the earlier one, or unless the reason for the earlier act is beyond peradventure removed. The two acts may well stand together and each supply what is lacking in the other, namely the maximum number of publications in the act of 1885 and the minimum number in the act of 1895. Or as said by the learned judge below, " The two acts can be read and stand together to read in at least three and not more than four newspapers." This construction is not only justified by the language of the acts, but by a proper interpretation of the will of the legislature, to wit: " to accomplish the object of giving proper notice of the election and at the same time to avoid imposition and unnecessary expense upon the counties."

As this record is presented, it nowhere appears that the sher-

iff has made a selection of the newspapers, either three or four, that he intends shall be paid by the county of York. While this action is brought by the Gazette Company, Limited, it appears by the case stated, that prior to October 24, 1902, the sheriff authorized, directed, and caused to be published in the plaintiff's newspaper as well as ten others the election proclamation, and as he has the right of selection which newspapers shall be paid by the county, we cannot act for him in this behalf, and the county is not liable to any newspaper until he makes his selection.

The danger of the appellant's interpretation of the statute is well shown in this record by permitting the sheriff to be the sole judge of the number of publications, when the aggregate cost of such publications is $4,115 in order to give notice of an election to 21,000 voters. As was said in Bartholomew v. Lehigh Co., 148 Pa. 82, " If the sheriff (under the act of 1885) can bind the county for the costs of publication in five newspapers, he can bind it for fifty, if so many were published in the county. It ought to be understood by this time that municipalities are not to be bound by the unauthorized acts of their officers." On appellant's theory, this sheriff could have had the publication in the nineteen newspapers, at a cost of over $7,000. Subject to the limitation as above stated, the discretionary power to select the newspapers is vested exclusively in the sheriff. He acts as the agent of the public, and the county is directly liable to the publishers for the advertising expense thus incurred. If the sheriff exceeds his authority, the county is not liable. The limit of his authority, so far as the selection of newspapers is concerned, is not prescribed by statute, and cannot be narrowed or enlarged by any action of the county commissioners: Bogert v. Luzerne County, 13 Pa. Superior Ct. 549; Graham v. Schuylkill County, 16 Pa. Superior Ct. 180.

It is not to be understood that because the county is directly liable for the advertising expenses incurred under this act that there are no limitations to the price the sheriff would agree to pay. In his acts as agent of the public, even within his discretionary power, he must exercise reasonable diligence and caution, and see that the taxpayers are protected from imposition in the payment of exorbitant and oppressive bills.

Under the case stated, it appears that the rate charged was

the usual one charged by the newspapers, and less than that charged in the neighboring cities for similar publications.

For the reasons given the judgment is affirmed.